**SHIPLEY FUELS MARKETING, LLC, Appellant**

v.

**Michael P. MEDROW and Anne F. Medrow and Andrew Johnson and Dona Saporosa, Appellees.**

Superior Court of Pennsylvania.

Submitted Jan. 17, 2012.

Filed Feb. 13, 2012.

John J. Baranski, Jr., York, for appellant.

David J. Scaggs, Paoli, for appellee.

BEFORE: STEVENS, P.J., BENDER, J., and DONOHUE, J.

---

OPINION BY BENDER, J.

Shipley Fuels Marketing (Shipley) appeals the trial court's entry of summary judgment in favor of Andrew Johnson and Dona Saporosa (the Johnsons), refusing to enter a lien on real property pursuant to Shipley's confession of judgment after title was transferred to the Johnsons. Shipley contends that the Johnsons had ample notice of the existence of the judgment and that, notwithstanding the requirements of the Rules of Civil Procedure, entry of the judgment in the Chester County judgment index should not be deemed necessary to assure imposition of a judgment lien. Upon review, we find Shipley's claims without merit. Accordingly, we affirm the entry of summary judgment.

This appeal follows a failed attempt by Shipley to obtain lien priority for a confessed judgment over a fee simple interest in real property created by the Johnsons' purchase of that property from Michael P. Medrow and Anne F. Medrow (the Medrows). The property in question consists of a residence and the surrounding curtilage at 1385 Beau Drive, West Chester, formerly owned by the Medrows. At a real estate closing conducted November 16, 2009, the Johnsons entered final settlement on the property for the sum of $462,675.00, and occupied the property that same day. Their deed to the property was recorded 18 days later, on December 4, 2009.

After the Johnsons had closed on the property, but before their deed was recorded, Shipley confessed judgment on a personal guarantee given by the Medrows of a debt of $116,207.72, for fuel deliveries to the Lancaster Travel Plaza, a business the Medrows owned. In its Complaint in Confession of Judgment, Shipley averred that the Medrows were guarantors of obligations of Lancaster Travel Plaza, LLC, and that the business itself had failed to pay those obligations. Although the Prothonotary's docket in Chester County documents that Shipley filed the confessed judgment on November 30, 2009, some four days before the recording of the Johnsons' deed, the record also establishes that judgment was not recorded in the judgment index until several weeks later, on December 30, 2009.

Subsequently, on May 17, 2010, Shipley filed a Praecipe for Writ of Revival seeking to revive a purported lien on the Beau Drive property and naming the Medrows as defendants and the Johnsons as terre-tenants, or actual possessors of the land. The Johnsons (but apparently not the Medrows) filed a timely Answer and New Matter to Praecipe for Writ of Revival, denying their status as mere terre-tenants, pleading their purchase of the property, and asserting the aforesaid chronology of the respective docket and judgment index. Thereafter, the Johnsons filed the motion for summary judgment that underlies this appeal, to which Shipley responded with a counter-motion for summary judgment. In support of their motion, the Johnsons argued that a judgment does not create a lien until recorded in the judgment index and that in view of the transfer of the property and recording of the deed prior to entry of the judgment in this case, no lien was created against the Beau Drive property. Shipley argued to the contrary that inasmuch as the confessed judgment was present on the Prothonotary's docket prior to the recording of their deed, the Johnsons were on notice of it and could not avoid the imposition of the lien.

Following oral argument, the trial court, The Honorable Edward Griffith, determined that the date on which the confessed judgment was entered in the judgment index was controlling of any lien priority. Inasmuch as the judgment was not indexed until well after the record transfer of the deed, the court concluded that no

lien had been created on the Beau Drive property. Trial Court Opinion, 9/6/11, at 1–2 (unnumbered). Shipley then filed this appeal, raising the following question for our review:

Did the [trial court] commit an error of law in holding that [the Johnsons'] deed was recorded prior to the indexing of Appellant Shipley's judgment by confession such that the court improperly granted [the Johnsons] motion for Summary Judgment and struck Shipley's judgment against 1385 Beau Drive?

Brief for Appellant at 4.

The Pennsylvania Rules of Civil Procedure allow disposition of a case on summary judgment only where the record demonstrates an absence of factual questions material to the elements of the disputed causes of action. We have held accordingly that:

"[A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense[.]" Under [Civil] Rule 1035.2(2), "if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action." Correspondingly, "[t]he non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party."

*Basile v. H & R Block, Inc.,* 777 A.2d 95, 100–01 (Pa.Super.2001) (citations omitted). Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law. *See Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038, 1042 (1996). As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. *See id.* at 1041. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the non-moving party granting [him] the benefit of all reasonable inferences and resolving all doubts in [his] favor. *See id.* We will reverse the court's order only where the appellant ... demonstrates that the court abused its discretion or committed legal error. *See Basile,* 777 A.2d at 101.

*Montagazzi v. Crisci,* 994 A.2d 626, 629–630 (Pa.Super.2010) (quoting *Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 190 (Pa.Super.2003)).

■ In this case, the record reveals no disputed questions of fact; consequently, our consideration is limited to a question of law, *i.e.,* whether Shipley's entry of the confessed judgment on the general docket of the court prior to the record filing of the Johnson's deed was sufficient to establish lien priority for the judgment. In support of establishing lien priority, Shipley argues that the information available in Chester County's docketing system (CHESCOPIN) on the date the Johnsons' deed was recorded was sufficient to apprise a searcher of Shipley's judgment even though it had not been entered in the judgment index:

Shipley argues that the information entered by [the Prothonotary's clerk] in the COURTVIEW system on November 30, 2009 was available on the CHESCOPIN system by December 1, 2009[,] was sufficient to satisfy both the purpose behind the requirement of indexing a judgment and the standard set forth in *Coral Gables* [*v. Kerl,* 334 Pa. 441, 6 A.2d 275 (Pa.1939) ] above.

First, the CHESCOPIN system allows abstractors to access both the general index and the judgment index from the same computer home screen. A CHESCOPIN user can easily flip between the general index screen and the judgment index screen without leaving the computer terminal at the prothonotary's office and the same easy transition [can] be accomplished remotely via an internet connection to CHESCOPIN. As such, both index screens are easily searched merely by inserting the last name of the person to be searched.

\* \* \* \*

By December 1, 2009, the general index screen would have provided the same essential information needed for a title abstractor to validate the status of the title to 1385 Beau Drive as the information found in the judgment index screen after December 30, 2009.

\* \* \* \*

Since the general index in Chester County through CHESCOPIN is searchable by last name exactly as the judgment index, there would have been absolutely no additional burden on an abstractor to locate information on the Shipley judgment against Medrow by typing "Medrow" into the general index screen. Had someone done that on December 1, 2009, the information provided would have been the same as that which the judgment index is designated to provide.

Brief for Appellant at 11–13. We find Shipley's argument insufficient to offer grounds for relief, as it fails to acknowledge the extent to which our law relies on the notice function of the judgment index.

In this case, the parties' dispute came before the trial court for disposition of Shipley's Petition for Writ of Revival of the underlying lien ostensibly created by the confessed judgment. Our Courts have recognized that "the only cognizable defenses in a proceeding to revive a judgment lien are that the judgment does not exist, has been paid or has been discharged." *PNC Bank, N.A. v. Balsamo,* 430 Pa.Super. 360, 634 A.2d 645, 649 (1993). The Johnsons' defense is tantamount to an assertion that the judgment Shipley sought to revive does not exist as it was entered against the Medrows and was not timely indexed against the Beau Street property. The Rules of Court support the Johnsons' defense, providing that the lien derived from a disputed judgment attaches only when the judgment is recorded in the judgment index, and assumes priority only from the date of that entry. Rule 3023 compels that conclusion in clear and unambiguous language:

**Rule 3023. Judgment. Lien. Duration**

(a) Except as provided by subdivision (b), a judgment *when entered in the judgment index* shall create a lien on real property located in the county, title to which at the time of entry is recorded in the name of the person against whom the judgment is entered.

\* \* \* \*

(b) A judgment upon a verdict or an order, when entered in the judgment index, shall

(1) continue the lien upon real property located in the county which is subject to the lien of the verdict or order upon which the judgment is entered, and

Note: *The lien of a verdict or order dates from the time the verdict or order is entered in the judgment index.* See Rule 3022(a).

(2) create a lien upon all other real property located in the county, title to which at the time of entry in the judgment index is recorded in the name of the person against whom the judgment is entered.

Pa.R.C.P. 3023(a), (b)(1), (2) (emphasis added). Significantly, the Rule also suspends a provision of the Judicial Code by which the legislature attempted to render a judgment's date of entry *on the general docket* controlling of the judgment's lien priority. Rule 3023(b)(3) documents that suspension, while the committee note explains the content of each of the suspended statutory sections:

> (3) Sections 8141(3), (4) and (5) of the Judicial Code, 42 Pa.C.S. §§ 8141(3), (4) and (5), are suspended in accordance with Article V, Section 10(c) of the Constitution of 1968 and Section 1722(b) of the Judicial Code, 42 Pa.C.S. § 1722(b), insofar as they are inconsistent with this rule.
>
> *Note:* Section 8141(3) of the Judicial Code provides that the lien of a verdict for a specific sum of money shall have priority from the time it is recorded by the court.
>
> Section 8141(4) of the Judicial Code provides that the lien of an adverse judgment and other orders shall have priority from the time it is rendered.
>
> Section 8141(5) of the Judicial Code provides that the lien of an amicable judgment shall have priority from the time the instrument on which it is entered is left for entry.

*Id.* at § 3023(b)(3).

■ Although there are no reported appellate decisions applying Rule 3023 to determine the priority of liens arising from confession of judgment, the plain language of the Rule restricts the lien priority of all judgments, as well as verdicts and orders, such that they may not assume lien status until entered in the judgment index. *See id.* at § 3023(a), (b)(1). Moreover, *no lien is created unless the corresponding judgment is indexed while title to the property against which the lien would lie remains in the parties against whom the judgment is entered. See id.* at 3023(a) (allowing

that "a judgment when entered in the judgment index shall create a lien on real property located in the county, title to which at the time of entry is recorded in the name of the person against whom the judgment is entered"). Our Supreme Court's suspension of statutory provisions that alter that scheme, *see* 42 Pa.C.S. 8141(3), (4), (5), demonstrates conclusively the continuing mandate that all judgments, whatever the means of their creation, assume lien status and priority only from the date and time of their entry in the judgment index. Thus, as concerns title to real property, the time-honored rule in Pennsylvania remains: "It is undoubtedly a general rule that a purchaser is not bound to look for judgments beyond the judgment index, and if his search discloses the existence of no liens entered there, he may properly assume that no such lien exists." *First Nat. Bank of Spring Mills v. Walker,* 296 Pa. 192, 145 A. 804, 805 (1929).

■ We recognize that prior to the adoption of Rule 3023, an exception might be made if circumstances necessarily known to a purchaser in the exercise of due diligence would put him on notice of a countervailing interest in the real property. *See id.* (noting "whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, where the inquiry, if pursued, would lead to knowledge of the requisite facts"). Although Shipley would argue that the appearance of a judgment on the general docket of the court would constitute such "notice" due to the ease with which a search might toggle between screens on CHESCOPIN, Chester County's docket and indexing system, we find such a conclusion at odds with our Supreme Court's suspension of 42 Pa.C.S. § 8141(3). As recognized in the Rules Committee's Note to Pa.R.C.P. 3023, that statutory provision would have rendered the appearance of a judgment on the gen-

eral docket controlling of the priority of the parties' respective interests in real property. In suspending that provision in favor of the primacy of the judgment index for determination of lien priority, our Supreme Court reaffirmed the "general rule" in *Walker*, and negated the supposed imperative that a purchaser of real estate must, as Shipley advocates, check the surnames of the property's prior owner in the general docket of the court. Brief for Appellant at 13. Although, consistent with prior practice, there may remain circumstances that "put[ ] a party on inquiry" concerning the certitude of the title he is about to record, *see Walker*, 145 A. at 805, the mere existence of a general docket (or database other than the judgment index) that can be searched by a computer is not one of them.[1] Any contrary conclusion would supplant the judgment index as the means of choice to establish and prioritize liens, effectively reinstate the suspended § 8141(3), and nullify our Supreme Court's direction in Pa.R.C.P. 3023. This we cannot do.

Having so reaffirmed the primacy of the judgment index as the dispositive means of determining lien attachment and priority, we may readily resolve Shipley's claim of right to the value of its judgment vis-à-vis the title to the Johnson's Beau Drive property. Rule 3023(a) expressly limits the possibility of a lien's attachment based upon the correspondence of the parties to the underlying judgment with those to the title of the real property against which the lien would be entered: "[A] judgment when entered in the judgment index shall create a lien on real property located in the county, *title to which at the time of entry is recorded in the name of the person against whom the judgment is entered.*" Pa. R.C.P. 3023(a). Inasmuch as title to the Beau Drive property vested in the Johnsons *not later than* December 4, 2009, when their deed was entered by the Recorder of Deeds, Shipley's judgment, entered on December 30 was of no effect. After December 4, only a judgment duly rendered against the Johnsons could create, or establish the priority of, a lien against the Beau Drive property. Shipley had not obtained such a judgment and, thus, had no recourse against the Johnsons or their property for its claims against the Medrows. Consequently, the trial court did not err in entering summary judgment in favor of the Johnsons and against Shipley.

For the foregoing reasons, we affirm the trial court's entry of summary judgment.

Summary judgment **AFFIRMED.**

---

1. Our Supreme Court's decision in *Coral Gables, supra,* upon which Shipley relies, does not compel a contrary conclusion. In *Coral Gables*, the subject judgment was both docketed *and* entered in the judgment index. The Court was called to determine the effect of a minor variance in the defendant's name, *i.e.,* whether the indexing of a judgment against Caroln Kerl provided constructive notice to a subsequent judgment creditor of Caroln C. Kerl. *See* 6 A.2d at 276–77. At no time did the Court in *Coral Gables* purport to dispense with the primacy of the judgment index in determining lien priority to real estate.