## Guardian Elder Care at Brockway LLC v. WRC Highland View Health Care

*John F. Stoviak* and *Braden A. Borger*, for plaintiff.
*Brett Farrar* and *Jeffrey Hantz*, for defendant.

FORADORA, *J.*, May 1, 2012—Introduction

In its motion for partial summary judgment, the plaintiff ("guardian") asks the court to strike paragraphs 326 and 327 of the defendant's ("WRC") answer and new matter. Those paragraphs, it contends, assert impermissible defenses against its contract-based claims.

In support of its motion, guardian submitted a record that included copies of the complaint and answer; a copy of the contract at issue; transcript excerpts, and various other documents. Both parties submitted briefs, and the court entertained oral arguments on April 23, 2012.

### Factual History

On May 21, 2007, the parties, acting through their designated representatives, entered into an asset purchase agreement ("agreement") whereby WRC transferred to guardian its interest in the real property and assets located at 90 Main Street, Brockway. Mtn. for Part. Summ. J., Exh. B The assets included the buildings on the property, as well as the furnishings, equipment, and supplies housed in the buildings. *Id.*, ¶ 1(b).

Among the agreement's provisions is paragraph 7, representations and warranties of the selling parties, which begins:

> The selling parties hereby jointly and severally represent and warrant to the Buyer as follows, and all such representations and warranties shall be true and correct as of the date hereof and shall be true and correct as of the closing date and shall survive for the period of two (2) years from the closing date.

Subsection (e) of that paragraph, condition of assets, states in relevant part that "[a]ll of the assets are in good condition and working order, normal wear and tear excepted, and function properly for their intended uses. The assets constitute all of the assets necessary to the conduct of the business." *Id.*, ¶ 7(e).

WRC also makes the following guarantee with respect to the condition of the real property:

The buildings, structures and equipment included in the premises have no material defects, are in good operating condition and repair and have been reasonably maintained consistent with standards generally followed in the industry (giving due account to the age and length of use of same, and ordinary wear and tear), are suitable for their present uses and, in the case of buildings and other structures, such buildings and other structures (including without limitation, the roofs thereof) are structurally sound.

*Id.*, ¶ 7(s)(ii).

The final portion of the paragraph represents WRC's truthfulness with respect to the representations made in the agreement, stating that:

[n]o representation or warranty by the selling parties contained in this agreement and no writing, certificate, list or other instrument furnished or to be furnished to the buyer pursuant hereto or in connection with the transaction contemplated hereby through the closing date contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact necessary in order to make the statements and

information contained therein not misleading or necessary in order to provide the buyer, as a prospective purchaser of the assets, with full and proper information with respect to the assets.

*Id.*, ¶7(bb).

In addition to defining WRC's affirmative contractual obligations, the agreement specified conditions precedent to the buyer's obligations, one of which addressed guardian's inspection of the premises:

The buyer shall have completed its due diligence review of the seller, the assets, the facility, the premises and the business on or before the due diligence period (as defined herein), the results of which shall be to its complete satisfaction as determined in its sole discretion, including but not limited to, the buyer's obtaining, at the buyer's sole expense, (i) an inspection of all mechanical equipment and all structures; (ii) an inspection of the facility to determine compliance with the Pennsylvania Department of Health's regulations; (iii) an inspection of the premises to determine compliance with existing or proposed environmental protection laws and regulations; and (iv) title work with respect to the premises.

*Id.*, ¶9(d).

In accordance with that provision, WRC authorized a 30-day period during which guardian could conduct its review and inspection and for which WRC would make available its financial and operating data "and other information and copies of documents with respect to [WRC's] services, operations, the assets, the business, the facility, [and] the

premises." *Id.*, ¶14. The express purpose of that paragraph was to allow guardian to investigate WRC's affairs, the premises, and the accuracy of the representations and warranties contained in the agreement. *Id.*

Paragraphs 9(b) and 14 notwithstanding, WRC agreed to indemnify guardian under certain circumstances. As set forth in guardian's complaint, the relevant portion of that provision reads as follows:

> The selling parties, jointly and severally, shall indemnify the buyer against and hold the buyer and its affiliates harmless of and from, and shall be liable for any and all demands, claims, losses, expenses, damages, deficiencies and liabilities of any kind or description made against and incurred by the buyer or its affiliates (including reasonable attorneys' fees and other costs and expenses incident to any suit, action or proceeding or any investigation with respect thereto) resulting at any time after the date of this agreement by reason of (i) any misrepresentation, breach of warranty or nonfulfillment of any covenant or agreement on the part of the selling parties, or either of them, contained in this agreement.

*Id.*, ¶ 16(a). That indemnification provision did not expressly limit WRC's obligations only to issues about which guardian was unaware or which were beyond the scope of what it discovered or should have discovered during its due diligence review and inspection. Nor did WRC negotiate a separate provision to thus limit guardian's future claims. Through its representatives' signatures, it nonetheless confirmed that the agreement constituted the parties' entire agreement, superseding all

prior negotiations, agreements, and understandings. *Id.*, ¶ 23(f). "This agreement," it further acknowledged, "may not be amended or revised except by a writing signed by all parties hereto." *Id.*

WRC and guardian also agreed to the waiver of terms and conditions provision, thereby conceding that:

> [t]he failure of any party to enforce at any time any of the provisions of this agreement shall in no way be construed to be a waiver of any such provision, nor in any way to affect the validity of this agreement or any part hereof or the right of any party thereafter to enforce each and every such provision. No waiver of any breach of this agreement shall be held to be a waiver of any other or subsequent breach.

*Id.*, ¶23(i).

WRC was represented by counsel as the parties negotiated the terms of the agreement, and before it was executed on May 21, 2007, each member of WRC's board received a copy of the document by e-mail. See *id.*, Exhs. C (WRC Depo., 11/25/2011) & D (WRC Bd. Mins. from May 21, 2007). Moreover, at a meeting called for the specific purpose of reviewing the agreement, attorney Kimber Latsha, appearing by phone, discussed its terms, including the representations and warranties provisions and a few minor changes to be made. *Id.* The board then voted unanimously to approve the agreement. *Id.*

Approximately two years later, Saul Ewing, LLP's Deborah Spranger, esquire sent a letter purporting to be a "formal notice pursuant to section 16(c) of the purchase agreement of buyer's claim for indemnity in the estimated

amount of $966,960.70." *Id.*, Exh. E. Sent to the attention of WRC's President and CEO, that letter reiterated what guardian deemed to be the operative terms of the agreement, itemized the alleged defects it had uncovered, and requested payment in the above-quoted amount.

On March 4, 2011, when payment was still not forthcoming, guardian filed a 299 paragraph complaint in which it pled 19 separate counts of breach of an express warranty on account of alleged material defects to the building and parking lot, furniture, and various systems and equipment; 1 count of breach of contract founded on WRC's failure to indemnify it for the alleged defects; and 1 count each of fraudulent concealment/misrepresentation and negligent misrepresentation. *Id.*, Exh. A.

WRC responded with an answer and new matter averring multiple affirmative and other defenses. *See Id.*, Exh. F. Among them, WRC alleged that "[p]laintiffs, prior to and up to closing, had the duty to perform, and conducted, a due diligence review and inspection of the Assets, facility and premises and identified no defects or deficiencies with respect to the same." *Id.*, ¶ 326. In the next paragraph it raised "the affirmative defense that because plaintiffs had the opportunity to inspect the assets, facility and premises, any alleged defects, which are denied, were disclosed by defendants and accepted by plaintiffs at the time of closing." *Id.*, ¶327. It is those two paragraphs with which guardian takes issue.

According to guardian, a breach of warranty claim does not contain a reliance element, thereby making WRC's attempts to raise a reliance defense impermissible as a matter of law. Referencing the language of the complaint, WRC

disagrees, calling the court's attention to paragraphs 1, 21, 34, and similar averments wherein guardian alleges that it was entitled to and did reasonably rely on the agreement's representations and warranties. Characterizing them as "judicial admissions," WRC contends that guardian itself raised the question of reliance and must be held to it.[1]

Guardian classifies its reliance averments as legal conclusions, however, observing that WRC does the same in its answer and noting that legal conclusions are not subject to the doctrine of judicial admissions. WRC does not concede the point, though. Acknowledging its repeated averment that "[t]he allegations contained in this paragraph state conclusions of law to which no response is required," see *id.*, Exh. F, ¶¶ 21, 34, it also notes that it treated guardian's reliance averments as factual in nature, as evidenced by its additional repetition of the following language: "To the extent that a response is required, after reasonable investigation, defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in this paragraph and, therefore, denies the same and strict proof thereof is demanded at the time of trial." *Id.*

### Discussion

A plaintiff may petition for and a court may grant summary judgment if, after the close of pleadings, the

---

1. WRC also noted that reliance was without question a legally cognizable defense to guardian's tort claims and that striking paragraphs 326 and 327 would deprive it of a viable defense. Guardian agreed and clarified at oral arguments that it was only asking the court to strike the paragraphs as they related to its contract claims. Because the parties correctly perceive the law in that regard, the court accepts guardian's clarification as an oral amendment to its motion and will address only whether reliance is a factor to be considered in contract-based claims.

record reveals that there exists no genuine issue of material fact as to a necessary element of an asserted defense. Pa.R.Civ.P. 1035.2(1). In deciding that question, the reviewing court must construe the facts of record and their reasonable inferences in the light most favorable to the non-moving party. *Shipley Fuels Mktg., LLC v. Medrow*, 37 A.3d 1215, 1217 (Pa. Super. 2012). Only where the record is clear and free from doubt may summary judgment be granted. *Toy v. Metro Life Ins. Co.*, 593 Pa. 20, 21, 928 A.2d 186, 195 (2007).

In this case, that standard favors guardian, because while our appellate courts have not directly answered whether reliance factors into a breach of warranty claim where the warranty appears as an express contractual provision, the general and well-established principles of contract law compel the result for which guardian advocates.

It is a fundamental and oft-repeated precept that a court interpreting a contract must give effect to the parties' intent as evidenced by the clear and unambiguous terms of the written instrument and may not modify that plain meaning under the guise of interpretation. E.g., *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (2012); *Crawford Cent. Sch. Dist. v. Commonwealth*, 585 Pa. 131, 143, 888 A.2d 616, 623 (2005). This is the case, according to *Crawford Central School*, because "[t]he intent of the parties to a written agreement is embodied in the writing itself [and] [c]ourts do not assume a contract's language was chosen carelessly, nor do they assume the parties were ignorant of the meaning of the language employed." *Id.*

A plain reading of the contract at issue here leaves no room for the insertion of reliance.

Without caveat, WRC warranted that its assets were in good condition and working order; were functional for their intended uses; and constituted all of the assets necessary for guardian to conduct business. It further warranted that the buildings, structures, and equipment being sold contained no material defects and were in good operating condition and repair. In addition, it verified that its warranties and representations did not and would not contain any omissions or untrue statements of material fact that would mislead guardian. Those were WRC's unequivocal, unqualified, and bargained-for guarantees, and the due diligence provisions did not alter its obligation to fulfill them.

In accordance with paragraphs 9(d) and 14 of the agreement, guardian was afforded ample opportunity to conduct a due diligence review and inspection. Yet neither purported to relieve WRC to any degree of its duties under the representations and warranties. Nor did the parties insert a separate provision whereby guardian agreed to waive those duties on account of its due diligence review and inspection. On the contrary, paragraph 23(i) specifically stated that neither party's failure to enforce any part of the agreement would be construed as a waiver or as affecting the validity and enforceability of the agreement.

Read so as to effectuate its clear and unambiguous terms, therefore, the text of the agreement itself leaves no room for the conclusion that the legal force and effect of WRC's representations and warranties was in any manner affected by the degree to which guardian did or should have relied on them.

Equally telling are the constituent elements of the cause

of action for breach of contract—of which breach of an express warranty is but a derivative.

To establish a breach of contract, a litigant need prove only three things: first, that a contract exists; second, that the opposing party breached a duty imposed by the contract; and third, that the claimant sustained damages as a result of the breach. See *Kane v. State Farm Fire & Cas. Co.*, 841 A.2d 1038, 1042 (Pa. Super. 2003). Nowhere does one find the additional element of reliance in the cause of action, because the central focus of contract law is not to redress a personal or property injury as one may do in tort, but to protect the parties' bargained-for expectations. *Meyer v. Cmty. Coll. Of Beaver County*, 2 A.3d 499, 502 (Pa. 2010).

One cannot reasonably surmise that the law intends that courts imply reliance, either. Rather, the law specifically recognizes certain hybrid claims, such as promissory estoppel, where an initiating promise undergirds the plaintiff's claim of injury but where that promise is not enforceable as a bargained-for, contractual guarantee. See e.g. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717-18 (Pa. Super. 2005) (reiterating the elements of promissory estoppel and noting that the doctrine permits a claimant to enforce a promise in the absence of consideration). There it is imperative that the plaintiff proves actual, detrimental reliance on the promise. Conversely, the articulated elements of a breach of contract claim ask only whether the alleged promise exists, whether the defendant broke that promise, and whether the plaintiff was injured as a result. Whether the plaintiff actually relied on that promise as his specific incentive for agreeing to the contract is immaterial.

Also compelling is the policy undergirding contract law and the undesirable but foreseeable ramifications of requiring breach of contract/warranty plaintiffs to prove a tort-like reliance.

"[T]he central focus of contract law," says *Meyer*, is the protection of bargained-for expectations." 2 A.3d at 502. That policy can only be advanced by requiring parties to perform their contractual obligations according to their explicit, negotiated terms, not according to what an allegedly breaching party contends were the aggrieved party's reliance expectations. Otherwise, contracting parties would be forever uncertain about the effectiveness of any contractual provision where it could later be argued that the defending party did not reasonably rely on it for one reason or another.

Likewise, as judge O'Neill persuasively articulated in *Giuffrida v. American Family Brands, Inc.*, Nos. CIV.A. 96-7062 & CIV.A. 96-7256, 1998 WL 196402 (E.D. Pa., April 23, 1998), representations and warranties such as those found in the agreement signify the apportionment of risk to which the contracting parties explicitly agree, and a party dissatisfied with the imposed risks may renegotiate or not agree to the transaction at all. See *id.* at *4. Once an agreement is executed, however, all parties involved should know precisely the nature and extent of their duties in relation to one another. Injecting the question of reliance eviscerates that certainty and predictability, however, because "it permits sellers to escape liability for negotiated representations and warranties by arguing to a fact-finder that buyers did not rely on the representations and warranties [and] allows contracting parties to avoid the plain meaning and effect of the contract to which they

agreed." *Id.*

As judge O'Neill further notes, introducing reliance into a cause of action for breach of an express warranty will also tend to encourage gamesmanship on the part of buyers, who will be incentivized to avoid due diligence in order to avoid a potential claim that their performance of due diligence waived the sellers' obligations under the representations and warranties. See *id.* at *5.

The approach adopted in *Giuffrida* and which this court adopts today leaves the apportionment of risk exactly where the parties laid it in the first place. It thus does exactly what contract law purports to do, which is to protect parties' bargained-for expectations by enforcing their bargains according to the plain meaning of the terms they originally negotiated. It is their duty to consider those terms, consider the validity of their representations and warranties, and determine whether they are willing to accept the unqualified risk of fulfilling them. If the answer is no, they may negotiate different terms, include an explicit waiver provision based on reliance, or abandon negotiations altogether. Under the clear dictates of contract law, however, it is not for courts to later rewrite contracts when a party wishes to operate under a different bargain.

It is the decision of this court, therefore, that WRC may not insert an additional element into guardian's breach of warranty and contract claims by asserting that it did not rely on the agreement's representations and warranties when it signed the agreement.

## ORDER

And now, May 1, 2012, for the reasons articulated in

the foregoing opinion, it is hereby ordered and decreed that the plaintiff's motion for partial summary judgment is granted. Accordingly, paragraphs 326 and 327 shall be stricken from the defendant's answer and new matter.