J-A21002-16

2017 PA Super 3

| EUGENE P. LEONI, JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GREGORY T. LEONI (AS THE EXECUTOR OF THE ESTATE OF EUGENE LEONI, SR.) AND MARIAN LEONI, | |
| Appellant | No. 3827 EDA 2015 |

Appeal from the Order Entered December 7, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):
No. 1989-01293
No. 1989-01294

| EUGENE P. LEONI, JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GREGORY T. LEONI (AS THE EXECUTOR OF THE ESTATE OF EUGENE LEONI, SR.) AND MARIAN LEONI, | |
| Appellant | No. 3828 EDA 2015 |

Appeal from the Order Entered December 7, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):
No. 1989-01293
No. 1989-01294

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

OPINION BY BENDER, P.J.E.:                    **FILED JANUARY 04, 2017**

Appellants, Gregory T. Leoni (as the executor of the estate of Eugene Leoni, Sr.) and Marian Leoni, appeal from orders entered in two separate cases on December 7, 2015, granting Appellee's, Eugene P. Leoni, Jr., motions to compel the distribution of escrow funds in his favor.[1] After careful review, we reverse.

The trial court provided the following detailed account of the relevant facts and lengthy procedural history of this case in its Pa.R.A.P. 1925(a) opinion:

> In 1989, Dr. Eugene Leoni, Sr. and his wife, Marian Leoni, issued five confessed judgments in favor of three of their four children [-] Nanette, Eugene, Jr.[,] and Gregory[,] and against themselves as a plan to protect their assets from creditors. On January 25, 1989, these judgments were entered in Montgomery County. These judgments included: two in favor of Eugene P. Leoni, Jr. ("[Appellee]") in the amounts of $375,000 and $215,000, docketed as 1989-01293 and 1989-01294, respectively ("the Eugene Judgments"); two in favor of Nanette Leoni in the amounts of $175,000 and $225,000, docketed as 1989-01297 and 1989-01298, respectively; and one in favor of Gregory Leoni in the amount of $165,000[,] docketed at 1989-01296. The Eugene Judgments were revived once on September 18, 1992. Dr. Leoni died on August 18, 2006[,] and Gregory Leoni was named executor of his estate.
>
> On November 1, 2006, [Appellee] filed praecipes for writs of revival of the judgments. These writs included a request to record the Eugene Judgments in the judgment index, which created liens against [Appellants'] real property located in Montgomery County. Gregory Leoni, in his capacity of executor of the estate of Eugene Leoni, Sr., opposed the revival of the Eugene Judgments.

---

[1] By *per curiam* order entered on February 4, 2016, this Court consolidated *sua sponte* the appeals at Nos. 3827 EDA 2015 and 3828 EDA 2015.

A bench trial was held before the Honorable Gary S. Silow on April 27, 2010[,] regarding the revival of the Eugene Judgments. On May 4, 2010, Judge Silow entered a decision that revived the Eugene Judgments in favor of [Appellee] and against [Appellants] in the amounts of $375,000 and $215,000. [Appellants] appealed that decision to the Superior Court on September 30, 2010. [Appellants] posted two irrevocable standby letters of credit on November 17, 2010[,] as security in the amounts of $450,000 in the case under docket number 1989-01293[,] and $258,000 in the case under docket number 1989-01294[,] during the pendency of the appeal pursuant to Pa.R.A.P. 1731 and 1734.

On November 23, 2010[,] Judge Silow entered the following order:

> AND NOW, this 23 day of November 2010, by agreements of counsel for the parties, since the [Appellants] have filed with the Prothonotary security in the form of irrevocable letters of credit in the aggregate amount of $708,000, representing 120% of the judgments at issue, pursuant to Pa.R.A.P. 1731 and 1734(a)(ii)(iii), and which shall remain in full force and effect pending [Appellants'] appeal, the filing of security by [Appellants] operated as an automatic supersedeas and stay pending [Appellants'] appeal.

On January 18, 2012, the Superior Court of Pennsylvania affirmed Judge Silow's decision under docket numbers 2807 EDA 2010 and 2808 EDA 2010. The Superior Court denied [Appellants'] request for reargument. [Appellants'] petitions for allowance of appeal from the order of the Superior Court were denied under docket numbers 327 MAL 2012 and 328 MAL 2012. The case was remanded by the Superior Court back to this court on December 4, 2012.

Prior to the case being remanded, Gregory and Nanette Leoni revived their judgments on May 21, 2012, creating liens in their favor on all real property owned by the Estate of Eugene Leoni Sr. and Marian Leoni.

On January 3, 2013, [Appellee] filed a motion to have [the] prothonotary direct [the] bank to draw down irrevocable standby letters of credit in favor of [Appellee] pursuant to Pa.R.A.P. 1734. On March 20, 2013, this court granted [Appellee's] motion and directed the prothonotary to collect the irrevocable standby letters of credit in the aggregate amount of $708,000

and distribute same to [Appellee]. On May 20, 2013, [Appellants] filed an emergency motion to stay draw down on irrevocable standby letters of credit, claiming [Appellee] [was] not entitled to the entire amount of the standby letters of credit, but solely the principal aggregate amount of the Eugene Judgments equaling $590,000, without interest. On May 23, 2013, the undersigned ordered the parties to file legal memoranda on the issue of whether [Appellee] was entitled to interest on the Eugene Judgments. On May 30, 2013, this court ordered the immediate disbursement of $590,000, said sum representing the undisputed principal of the two Eugene Judgments. The principal of the Eugene Judgments was paid to [Appellee] on June 18, 2013.

On August 5, 2013, [Appellee] filed a petition to assess interest from January 25, 1989[,] on the two Eugene Judgments totaling $849,600. On September 10, 2013, after [receiving] no response to [Appellee's] petition to assess interest, this court granted said petition and assessed interest on the Eugene Judgments in the amount of $849,600.

On September 16, 2013, [Appellants] filed a motion to vacate order of September 10, 2013 (hereinafter "Motion to Vacate"). On September 18, 2013, the court stayed its order of September 10, 2013[,] and scheduled argument on the Motion to Vacate.

On September 27, 2013, in order to effectuate the sale of a property owned by [Appellants] on which [Appellee] claimed a judgment lien, [Appellee] and [Appellants] entered into an agreement ("Escrow Agreement") to place the proceeds from the sale in escrow at City Line Abstract ("Escrow Funds"). The parties further "agreed to cause the liens, if any, of the Eugene Judgments and the September 10, 2013 order to be released from the property and any such liens shall attached [*sic*] to the Escrow Fund … in the same order of priority as they existed prior to the execution of this Escrow Agreement."

On October 15, 2013[,] [Appellants] filed a motion to compel the distribution of escrow and termination of letters of credit ("Motion to Compel") seeking the court to order: (1) [Appellee] and his assignee to enter satisfactions of the judgments; (2) [Appellee] and his assignee to pay the Estate of Marian E. Leoni the sum of $5,900 (1% of $590,000) for each day that the satisfactions have not been entered since July 18, 2013; (3) the proceeds held in escrow by City Line Abstract Company be

distributed immediately to Gregory T. Leoni and Nanette G. Leoni; and (4) the letters of credit issued by Ambler Savings Bank immediately be terminated and cancelled.

On December 12, 2013, the court entered orders which denied [Appellants'] Motion to Vacate and [Appellants'] Motion to Compel. [Appellants] appealed these order[s] to the Pennsylvania Superior Court on January 9, 2014. The Pennsylvania Superior Court affirmed the court's orders denying [Appellants'] Motion to Compel and separate Motion to Vacate. In addition, the Court quashed the portion of the appeal as it related to the priorities of liens on the Escrow Funds in an opinion dated February 19, 2015. [Appellants'] petitions for allowance of appeal from the order of the Superior Court were denied under docket numbers 397-400 MAL 2015. The case was remanded by the Superior Court to the trial court on November 19, 2015.

On February 26, 2014, while the prior appeal was pending in the appellate courts, [Appellee] filed a motion to authorize the distribution of an escrow fund. [Appellee] requested the court to order the Escrow Funds be distributed to satisfy, in part, the interest on the Eugene Judgments since the amount of the irrevocable letters of credit did not satisfy the principal and interest of the Eugene Judgments. [Appellants] replied on March 11, 2015. Following oral argument held on May 13, 2015 and November 13, 2015, the court entered an order on December 7, 2015[,] which granted [Appellee's] Motion to Compel the Distribution of an Escrow.

Trial Court Opinion (TCO), 2/12/16, at 1-5.

On December 16, 2015, Appellants filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants now present the following issues for our review:

1. Whether [the trial court] committed an abuse of discretion or error of law in directing that the funds in escrow at City Line Abstract be disbursed to [Appellee].

2. Whether [the trial court] committed an abuse of discretion or error of law in directing that the funds in escrow at City Line Abstract be disbursed to [Appellee] when the liens of the judgments of Eugene P. Leoni, Jr. had been discharged pursuant to Pa.R.A.P. 1735.

3. Whether [the trial court] committed an abuse of discretion or error of law in directing that the funds in escrow at City Line Abstract be disbursed to [Appellee] when the liens of the judgments in favor [of] Eugene P. Leoni, Jr. were subordinate to the liens of the judgments in favor of Gregory T. Leoni and Nanette Leoni.

4. Whether [the trial court] committed an abuse of discretion or error of law in finding that the supersedeas had no effect on the priority or validity of the liens of [Appellee's] judgments, citing **Shearer v. Naftzinger**, 747 A.2d 859 (Pa. 2000).

Appellants' Brief at 4.

It is well-settled that our review of the trial court's decision after a non-jury trial is "limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law." **Shaffer v. O'Toole**, 964 A.2d 420, 422 (Pa. Super. 2009).

> Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.
>
> The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the

- 6 -

lower court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

*Id.* at 422-423 (internal quotation marks and citations omitted).

All of the issues raised by Appellants hinge on the resolution of their final claim. Thus, we begin by addressing whether the supersedeas posted by Appellants on November 17, 2010, had any effect on the priority or validity of Appellee's judgment liens. As discussed *supra*, the trial court entered orders on December 7, 2015, granting Appellee's motions to compel the distribution of escrow to satisfy, in part, the Eugene Judgments. The trial court's order was based on its conclusion that the supersedeas did not have any effect on the Eugene Judgment liens and that the liens maintained their original priority. Appellants argue, however, that the filing of the supersedeas bond caused the Eugene Judgment liens to be discharged from the real estate, which in turn elevated the priority of the revived judgment liens of Gregory and Nanette. Accordingly, Appellants argue that Gregory and Nanette, rather than Appellee, are entitled to the escrow proceeds. After careful consideration, we are in agreement with Appellants.

Pennsylvania Rule of Appellate Procedure 1731 provides, in relevant part:

> [A]n appeal from an order involving solely the payment of money shall, unless otherwise ordered pursuant to this chapter, operate as a supersedeas *upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid*.

Pa.R.A.P. 1731(a) (emphasis added). In the instant case, Appellants posted irrevocable standby letters of credit totaling $708,000 as security for the

- 7 -

amount owed to Appellee pending their appeal of the May 4, 2010 orders reviving the Eugene Judgments.[2]  The total amount of the letters of credit represented 120% of the Eugene Judgments' total principal, in accordance with Rule 1731.  The trial court confirmed that the security posted "operated as an automatic supersedeas and stay pending [Appellants'] appeal[s]."  Trial Court Order, 11/23/10, at 1.

The effect of supersedeas is governed by Pennsylvania Rule of Appellate Procedure 1735, which provides as follows:

**Rule 1735.  Effect of Supersedeas on Execution or Distribution**

**(a)  General rule.**  The filing of appropriate security in the amount required by or pursuant to this chapter within 30 days from the entry of the order appealed from shall stay *any* execution theretofore entered.  The filing of such appropriate security after the 30 day period shall stay only executions or distributions thereafter issued or ordered.

**(b)  Notation in judgment index.**  Upon the filing of appropriate security in the amount required by or pursuant to this chapter the clerk of the lower court shall note in the docket and in any separate judgment index:  "appeal perfected; *lien discharged*."  Upon return of the record by the appellate court to the lower court, in a matter where the order appealed from was affirmed in whole or in part, the clerk of the lower court shall thereupon enter an order,

---

[2] In accordance with Pa.R.A.P. 1734, "irrevocable letters of credit issued by a Federally-insured bank, bank and trust company, savings bank, savings association, banking association or saving and loan association having an office within this Commonwealth" constitute "appropriate security" for the purposes of determining a supersedeas bond under Chapter 17 of the Rules of Appellate Procedure.  Pa.R.A.P. 1734(a)(2)(iii).

> as of the date of receipt of the remanded record, against the appellant for the amount due upon the order as affirmed, with interest and costs as provided by law.

Pa.R.A.P. 1735 (emphasis added).

The trial court erroneously concluded that Rule 1735 does not apply to this matter and, therefore, Appellee's liens were not discharged upon the filing of the supersedeas. TCO at 7. The court elaborated:

> Pa.R.A.P. 1735 applies only to execution liens and disbursement. This is evidenced by the title "Effect of Supersedeas on Execution or Distribution." An execution lien is created by the sheriff's levy and authorizes a sheriff or other officer to enforce a money judgment usually by means of seizing and selling the judgment debtor's property. **Shearer v. Naftzinger**, 747 A.2d 859, 860 (Pa. 2000). A writ of revival of a judgment lien preserves a judgment creditor's existing rights and priorities. **Id.** at 861.

TCO at 7. These puzzling remarks by the trial court seem to imply that Rule 1735 only applies to execution liens and sheriff's sales of personal property. However, Chapter 17 of the Rules of Appellate Procedure governs the effect of appeals, in general – not only appeals from sheriff's execution liens - and the subchapter of Chapter 17 which consists of Rules 1731 to 1735 "prescribes the procedures to obtain specific forms of ancillary relief pending appeal in civil matters on appeal…." 20A West's Pa.Prac., Appellate Practice § 1701:1. Moreover, the use of the word "or" in the title of Rule 1735 clearly reflects the applicability of this Rule to distributions, *i.e.*, of escrow funds, as well as executions. We find no basis, whatsoever, for the trial court's conclusion that Rule 1735 applies only to execution liens created by a

sheriff's levy.[3]  To the contrary, we conclude that Rule 1735 clearly applies to the instant case and, thus, we must next examine the implications of this Rule in the matter before us.  Specifically, it is the interpretation of Rule 1735(b) that is the crux of the dispute in this matter.

The language in Rule 1735(b) plainly and unambiguously directs the clerk of court to make the following notation in the docket *and in any separate judgment index*, upon the filing of appropriate security in the amount required under Chapter 17:  "Appeal perfected; *lien discharged*." Pa.R.A.P. 1735(b) (emphasis added).   The parties are at odds over whether the notation of "appeal perfected; lien discharged" in the judgment index results in a discharge of a judgment lien on real property.   Appellants argue that under the plain language of Rule 1735, the judgment lien is discharged upon receipt of appropriate security and the notation in the judgment index, thus causing the lien to be lifted from the affected real property.   However, Appellee contends that Rule 1735 is only procedural in nature and that it does not have any substantive effect on his judgment liens. Appellee's Brief

---

[3] The trial court's citation to **Shearer**, 747 A.2d at 860, regarding the creation of an execution lien by a sheriff's levy and the enforcement of such a lien by means of seizing and selling the judgment debtor's property is misplaced. The sole issue in **Shearer** was whether the statute of limitations under 42 Pa.C.S. § 5529(a), which provides that an execution against personal property must be issued within 20 years after the entry of the judgment upon which the execution is to be issued, can be used as a defense in a proceeding to revive a judgment lien. **Id. Shearer** does not involve a supersedeas or the effect of supersedeas on liens against real property and has no relevance to the present case.

at 8. More specifically, Appellee argues that the body of Rule 1735 "does not state that judgment liens are discharged upon the entry of supersedeas." *Id.* at 9. Rather, Appellee states, "[t]he reference to notating 'lien discharged' in the judgment index only applies to 'execution liens' created by the sheriff's levy and attachment and there is no reference to judgment liens." *Id.*

Again, we reject the contention that Rule 1735 only applies to 'execution liens' and deem Appellee's argument to be meritless. Pennsylvania Rule of Civil Procedure 3023 provides, in relevant part: "[A] judgment when entered in the judgment index shall create a lien on real property located in the county, title to which at the time of entry is recorded in the name of the person against whom the judgment is entered." Pa.R.C.P. 3023(a). We have previously explained:

> [T]he plain language of [Rule 3023] restricts the lien priority of all judgments, as well as verdicts and orders, such that they may not assume lien status until entered in the judgment index. Moreover, no lien is created unless the corresponding judgment is indexed while title to the property against which the lien would lie remains in the parties against whom the judgment is entered. Our Supreme Court's suspension of statutory provisions that alter that scheme demonstrates conclusively the continuing mandate that all judgments, whatever the means of their creation, assume lien status and priority only from the date and time of their entry in the judgment index. Thus, as concerns title to real property, the time-honored rule in Pennsylvania remains: "It is undoubtedly a general rule that a purchaser is not bound to look for judgments beyond the judgment index, and if his search discloses the existence of no liens entered there, he may properly assume that no such lien exists." *First Nat. Bank of Spring Mills v. Walker*, 296 Pa. 192, 145 A. 804, 805 (1929).

- 11 -

***Shipley Fuels Marketing, LLC v. Medrow***, 37 A.3d 1215, 1219 (Pa. Super. 2012) (emphasis added in ***Shipley Fuels Marketing, LLC***) (internal citations omitted).  Accordingly, the instruction to the clerk of court set forth in Rule 1735(b), to make a notation in the judgment index, is of utmost importance because the notation places the public on notice that the lien has been discharged.  If we were to affirm the trial court's interpretation that the notation in the judgment index has no legal effect on the status or priority of Appellee's liens, we would be contradicting the time-honored rule in Pennsylvania that a purchaser is not bound to look for judgment beyond the judgment index.  ***Id.*** at 1219.

Here, the record reveals that the clerk of the Montgomery County Court properly noted "Appeal Perfected/Lien Discharged" in the judgment index regarding Appellee's judgments against Eugene P. Leoni, Sr., Gregory Leoni, and Marian Leoni, in accordance with Rule 1735(b).  Thus, it would appear to any potential purchasers or lienholders that Appellants' real property was unencumbered by the Eugene Judgment liens.  It is only fair to conclude that Appellee's judgment liens were, in fact, discharged upon the filing of the supersedeas and subsequent notation in the Montgomery County judgment index.  Hence, when Gregory and Nanette's liens were revived on May 21, 2012, their judgment liens took priority over the Eugene Judgments.  ***See*** PA Practice, Appellate Practice § 1725:2 (stating "[t]he requirement that the clerk enter an order against the appellant for the

amount due is critical because it, in effect, reinstates the lien of the original judgment and, thus, could affect priority among lien holders").

Being that there is no Pennsylvania case law on point, we look to the legislative history of Rule 1735(b) for further clarification of the legislature's intent.[4] Prior to the enactment of Pa.R.A.P. 1735, the effect of supersedeas was controlled by statute, 12 P.S. § 1139 (Public Law 103 of April 22, 1909; Section 1). **See** TCO at 7. The original Act ("Act 61"), which was codified by 12 P.S. § 1139, provides in its entirety, as follows:

No. 61.

AN ACT

Relating to the entry of bail upon an appeal to the supreme or superior court, from an order, judgment, or decree directing the payment of money, ***and the release of the appellant's real estate from the lien of said judgment, order, or decree pending the appeal and re-entry of judgment, if judgement be affirmed.***

Section 1. Be it enacted, … That hereafter it shall be lawful for any one against whom an order, judgment, or decree directing the payment of money shall have been made by any court of record of this Commonwealth, upon taking or entering an appeal to the superior court or the supreme court of this

---

[4] We also find persuasive case law of other states with similar rules of appellate procedure regarding the effect of supersedeas on judgment liens. **See Diversified Holdings, L.C. v. Turner**, 63 P.3d 686, 705, 2002 UT 129 (2002) (holding that "a supersedeas bond determined to be sufficient in form and amount by the trial judge may serve as [security] sufficient to release a judgment lien" on real estate); **See also Davis v. Perry**, 120 Cal. App. 670, 673 (1932) (stating "[t]he lien of the judgment and the lien of the attachment on real property are both terminated by the filing of a supersedeas bond").

Commonwealth, to enter bail in the court below in double the amount of such order, judgment, or decree, with security to be approved by the said court, conditioned for the payment of the amount finally adjudged to be due upon such order, judgment, or decree, including interest and costs; or that the appellant in such cases may, in lieu of entering such bail, deposit with the prothonotary of the said court below, in cash, such amount as the said court shall, upon petition, deem to be sufficient to insure the payment of the amount finally adjudged to be due and owing upon said order, judgment, or decree; and, in either case, ***upon the entry of said bail or the deposit of money, as aforesaid, and upon the said appeal being perfected, the said judgment and the verdict, when such judgment has been entered on a verdict, order, or decree, shall cease to be a lien against the real estate of the appellant; and the prothonotary or clerk of the said court shall thereupon mark upon the docket and upon the margin of the judgment index, "appeal perfected; lien discharged:"*** Provided, however, That ***upon the return of the record of such judgment,*** order, or decree to the said court below, with a remittitur certifying the said judgment, order, or decree to have been affirmed in whole or in part, ***the prothonotary shall thereupon enter judgment, as of that date,*** against the appellant for the amount due upon the said judgment, order, or decree as affirmed, with interest and costs as provided by law.

P.L. 103, No. 61 (12 P.S. § 1139) (emphasis added).

The plain language of Act 61 clearly indicates that the Act applied to appeals from judgments or orders directing the payment of money, as in the present case. We note that the preface to Act 61 expressly states the Act related to the *release of appellant's real estate from the lien of said judgment or order,* pending the appeal and re-entry of the judgment if the judgment was affirmed. **Id.** Moreover, the body of Act 61 clearly and unambiguously dictates that upon receipt of appropriate security, the judgment "*shall cease to be a lien against the real estate of the appellant*; and the prothonotary or clerk of the said court shall thereupon mark upon

- 14 -

the docket and upon the margin of the judgment index, "appeal perfected; lien discharged." *Id.* (emphasis added). As further evidence of the legislature's intent for the judgment lien to cease to exist against the appellant's real estate upon the entry of the notation in the judgment index, the Act further directs the prothonotary to re-enter judgment, as of the date the record is returned to the lower court, against the appellant for the amount due upon said judgment if affirmed on appeal. *Id.*

Pa.R.A.P. 1735 was adopted on November 5, 1975, and made effective on July 1, 1976. It was accompanied at the time with an Official Note that read, in its entirety, as follows:

> *Note*: Subdivision (a) of this rule changes former practice under the Act of May 19, 1897 (P.L. 67, No. 53), § 4 which provided a three week period for superseding execution. **Subdivision (b) of this rule is based on the Act of April 22, 1909 (P.L. 103, No. 61) (12 P.S. § 1139), which is suspended absolutely by these rules, and makes no change in substance**.

Pa.R.A.P. 1735, Official Note (emphasis added).[5]

The trial court opined that the omission of the language "shall cease to be a lien against the real estate of the appellant" from Act 61 with the adoption of Rule 1735, in conjunction with the deletion of the Official Note in 1978, indicates that the effect of supersedeas no longer applies to liens on real property. Based on our foregoing analysis, we deem the trial court's

---

[5] The Appellate Rules Committee deleted the Official Note by amendment to Pa.R.A.P. 1735 on December 11, 1978.

interpretation to be an error of law. Moreover, the trial court's citation to *Deremer v. Workmen's Comp. Appeal Bd.*, 433 A.2d 926 (Pa. Cmwlth. 1981), in support of its conclusion is misapplied. *See* TCO at 8. The *Deremer* Court held that "[t]he deletion of statutory language by the legislature renders the language inoperative and indicates that the legislature has admitted a different intent." *Demerer*, 433 A.2d at 928. Here, the language of Rule 1735 was never changed or deleted. Only the Official Note accompanying the Rule was omitted.

While the language of Rule 1735 differs slightly from the language of Act 61, the Appellate Rules Committee expressly stated in its Official Note that the Rule "makes no change in substance" to the Act. Thus, it is abundantly clear that Rule 1735 was intended to maintain the same effect. The mere deletion of the Note after several years had no effect on the substance of the Rule. We agree with Appellants that the Note was eventually dropped because it had merely become superfluous to the Rule, which, to date, has never been amended.

Based on our foregoing analysis, we must reject the trial court's assertion that it would be "illogical and inequitable if [Appellee] lost priority in [his] judgment lien due to [Appellants'] appeal of the writ of revival to the Superior Court, particularly when the bond posted is not sufficient to cover the total amount of the judgment including interest." TCO at 8. To the contrary, we find the only logical and equitable conclusion to be that Appellee's judgment liens were, in fact, discharged by the filing of the

supersedeas, which resulted here in the loss of priority in Appellee's judgment liens. The supersedeas was deemed by the trial court to be "appropriate security," and the purpose of requiring 120% bond is to account for interest and costs incurred during the appeal to protect the appellee's interests. Moreover, "a court may enter judgment in the amount of an appeal bond if appellant is not successful on appeal." **Burrell Const. & Supply v. Straub**, 656 A.2d 529, 533 (Pa. Super. 1995).

Significantly, the Pennsylvania Rules of Appellate Procedure provide the following means to object, in the event that a party disagrees with the amount of the supersedeas posted:

**Rule 1737. Objections to Security**

(a)     The lower court or the appellate court, may at any time *upon application of any party* and after notice and opportunity for hearing:

…

*(4)*     *increase*, decrease, eliminate, or otherwise alter the amount or type of any security that has been or is to be filed by a party, upon cause shown for modification.

Pa.R.A.P. 1737(a)(4) (emphasis added). Accordingly, if Appellee believed the standard 120% supersedeas amount required under Rule 1731 was insufficient to protect his interests, then he could have petitioned the court for an increase in the amount of security. However, Appellee failed to do so. He should not now be permitted to benefit from his failure to implement the appropriate means provided him under the Pennsylvania Rules of Appellate

- 17 -

Procedure to seek additional security at the time the supersedeas was posted.

It was not until August of 2013, almost three years after the initial appeals were filed, that Appellee petitioned the court to assess interest on his judgments from January 25, 1989. The trial court issued an order on September 10, 2013, assessing interest owed on the Eugene Judgments in the amount of $849,000. Although this amount was not included in the calculation of the supersedeas, Appellee remains adequately protected by the judgment obtained for the additional interest owed to him.[6]

Finally, we are unconvinced by the trial court's proclamation that "[i]f this court found the supersedeas discharged [Appellee's] liens[,] thereby eliminating [Appellee's] priority, it would encourage other litigants to strategically appeal revival of judgments for the purpose of changing lien proprieties [*sic*]." TCO at 8-9. The requirement of appropriate security protects against this very scenario, as appellants run the risk of losing the supersedeas bond in the event they are unsuccessful on appeal.

As the trial court stated, "[t]he purpose of a supersedeas bond is to maintain the status quo and protect the winning party from injury during the appeal period. Such a bond protects an appellee because it guarantee[s]

---

[6] The Montgomery County judgment index reflects judgments in favor of Appellee and against Appellants in the amount of $849,000, as of September 19, 2013.

that his judgment, if it is affirmed, will be paid in full, with interest and court costs." TCO at 9 (quoting **Parkinson v. Lowe**, 760 A.2d 65, 67-68 (Pa. Super. 2000) (internal citations omitted)). Here, the supersedeas acted as security for the amount of Appellee's judgments, plus appropriate costs and interest. It would be illogical to conclude that Appellee maintained his liens against Appellants' real property during the pending appeal, as this would unnecessarily further encumber Appellants' assets and would result in Appellee's being doubly protected. In sum, we conclude that the trial court erred in directing the escrow funds to be disbursed to Appellee.

Orders reversed. Case remanded for entry of orders consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/4/2017</u>