J-A04036-21

2021 PA Super 31

| METRO REAL ESTATE INVESTMENT, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MICHAEL SIAWAY, DEANDRE BEMBRY, AND JAI WILLIAMS | : | No. 827 EDA 2020 |
| APPEAL OF: DEANDRE BEMBRY | : | |

Appeal from the Order Entered February 11, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 160702370

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                    **FILED MARCH 02, 2021**

Deandre Bembry (Bembry) appeals from the February 11, 2020[1] order of the Court of Common Pleas of Philadelphia County (trial court) denying his Motion for Restitution Sur Restoration of Attachment Execution Funds Seized by Plaintiff on a Writ of (Attachment/Garnishment) Execution to Enforce Money Judgment Subsequently Reversed and Vacated by the Superior Court

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The text of the trial court's order is dated February 6, 2020, coinciding with the trial court's denial of the motion on the record following oral argument. The written order was not docketed until February 11, 2020, and was not appealable until that date.  *See* Pa.R.A.P. 301(a)(1).  Bembry's appeal was timely filed on February 25, 2020.

of Pennsylvania (motion for restitution).  We reverse and remand for further proceedings.

**I.**

We glean the following facts from the certified record.  In May 2015, Bembry and two other individuals (collectively, the defendants) entered into a one-year lease agreement with Metro Real Estate (Metro) for a residential property in Philadelphia.  Prior to the expiration of the lease, the defendants stopped paying rent and certain utilities, but did not give notice that they intended to terminate the lease.  Following a landlord-tenant complaint in 2016 in the Philadelphia Municipal Court, Metro was awarded default judgment and possession of the property.[2]  After the defendants vacated the property, Metro discovered that significant damage had been done to the property.  Accordingly, Metro filed a breach of contract and negligence action against the defendants in the trial court in July 2016.

The parties proceeded to a non-jury trial at which Metro presented evidence of breach of the notice provision of the lease and damage to the property that it discovered after the defendants vacated.  It asserted that due

---

[2] Bembry later petitioned to open the default judgment.  Following a hearing, Philadelphia Municipal Court vacated the default judgment of $7,371.89 and entered a new judgment in favor of Metro for $4,287.78.  This judgment included unpaid rent for the lease term, unpaid utility bills and property citations, attorneys' fees and court costs.  The Municipal Court did not award damages for additional rent beyond the lease term.  Neither party appealed this judgment.

to the property damage, it had not been able to rent the unit to a new tenant for several months after the defendants moved out. The trial court held that the defendants had breached the lease agreement by failing to give notice of their intent to terminate the lease and that they had caused significant damage to the property. Thus, the trial court awarded Metro $30,000 in damages, which was offset by the defendants' $3,000 security deposit for a judgment of $27,000.

Bembry appealed and argued that *res judicata* prevented Metro from bringing its action in the trial court when the parties had already litigated the same claim in the Municipal Court. On appeal, this court agreed that *res judicata* barred Metro from pursuing its claims in the trial court when it had already instituted and won an action in the Municipal Court and could have presented the claims in that action. **Metro Real Estate Investment, LLC v. Bembry**, 207 A.3d 336, 341 (Pa. Super. 2019). We concluded that Metro could have amended its Municipal Court complaint to raise the new claims or filed a new complaint and consolidated the new cases, but it was not entitled to pursue two different actions in two courts. **Id.** Accordingly, we vacated the judgment against Bembry.

However, while Bembry's appeal was pending in this court, Metro filed a *praecipe* to issue writ of execution against Bembry and Bank of America as garnishee. Judgment by admission was subsequently entered against Bank of America as garnishee, which paid Metro $24,017.70 that it held on deposit

for Bembry. Metro filed an order to mark the judgment against Bank of America as satisfied on July 24, 2018.

Because this court had vacated the judgment against Bembry, he filed a motion for restitution seeking to recover $24,017.70 plus interest from Metro. Metro filed a response arguing that the trial court did not have jurisdiction over the motion and that Bembry was not entitled to restitution. Bembry filed a reply and the trial court held oral argument on February 6, 2020. The trial court denied the motion and Bembry timely appealed. Bembry and the trial court have complied with Pa.R.A.P. 1925.

## II.

On appeal, Bembry argues that his motion for restitution was properly filed in the trial court following his successful appeal because long-standing Pennsylvania jurisprudence grants trial courts jurisdiction to order restitution following the reversal of a judgment. He contends that the satisfaction of judgment entered against Bank of America as garnishee did not end the controversy between himself and Metro. He argues that while the Rules of Appellate Procedure allowed him to post a *supersedeas* bond or seek a stay of execution during his appeal, he did not forfeit his right to restitution by failing to do so.

Metro responds that the trial court did not have jurisdiction to consider the motion for restitution following Bembry's successful appeal. It argues that when it filed the satisfaction of judgment in the trial court, the judgment was

extinguished entirely and conclusively. Because the judgment was satisfied, it contends that the case became moot before this court issued the decision on Bembry's appeal because there was no judgment to support either the appellate or trial court's jurisdiction. It further argues that the case law cited by Bembry is no longer controlling because it has not been relied upon by "modern" courts and was superseded in 1975 by various Rules of Appellate Procedure. Moreover, Metro claims that because Bembry did not avail himself of the remedies in the Rules to prevent Metro from executing the judgment, he is not entitled to seek the equitable remedy of restitution.

## A.

In support of his motion for restitution, Bembry relies upon a series of cases from the nineteenth and early twentieth century allowing for summary restitution for an appellant who successfully obtains a reversal of a judgment on appeal. We begin with a review of these precedents.

In **Ranck v. Becker**, 13 Serg. & Rawle 41 (Pa. 1825), the defendants sought restitution for a judgment that had been executed prior to reversal on appeal. Our Supreme Court held that "[r]estitution is always granted on the reversal of a judgment, unless there be something peculiar in the case." **Id.** at 42-43. The Court rejected the plaintiff's argument that he should not have

to make restitution because he was likely to succeed on retrial.[3]  *Id.* at 43; *see also Breading v. Blocher*, 29 Pa. 347 (Pa. 1857) ("A judgment of restitution, given upon the reversal of an erroneous judgment, is conclusive of the matters adjudicated by it.  It establishes beyond further question the right of the plaintiff in error to be restored to all things which he has lost by reason of the erroneous judgment."); *Wolongevicz v. Stegmaier Brewing Co.*, 61 Pa. Super. 70, 72-73 (Pa. Super. 1915) (same).

In *Benscoter v. Long*, 31 A. 863, 864 (Pa. 1895), the defendant sought a writ of restitution after the judgment against him was reversed on appeal. The trial court granted the writ and the plaintiff appealed.  Our Supreme Court summarily affirmed, holding that "the action of the court below was so manifestly just and proper that plaintiff should have recognized its correctness, and complied with the mandate of the writ."  *Id.*

Similarly, in *Whitesell v. Peck*, 35 A. 48 (Pa. 1896), the plaintiff's attorneys entered a satisfaction on the record after successfully obtaining a judgment against the defendant's property.  The plaintiff petitioned to strike

---

[3] The plaintiff had executed the judgment against the defendant's property, which was also encumbered by other judgments at the time of execution. While the Court held that restitution was proper for the judgment Becker had executed against the property, it dictated that in the interest of justice, the funds should be returned to the court, which would then distribute them to the defendant's other creditors.  *Id.* at 43.  This remedy, particular to the circumstances of the judgments against the defendant, did not undermine the Court's general holding that a defendant is entitled to restitution following the reversal of a judgment on appeal.

the satisfaction and the petition was granted. The purchaser of the defendant's property appealed the decision to strike the satisfaction. While on appeal, the plaintiff executed the judgment against the purchaser. The purchaser succeeded on appeal and sought restitution for the judgment he had paid, and the Supreme Court agreed. *Id.* ("[W]e now have no hesitation in saying that a writ of restitution should issue out of the court below.").

In ***Charak v. John T. Porter Co.***, 135 A. 730, 731 (Pa. 1927), our Supreme Court held that the appellant's appeal bond did not stay the execution of the judgment because it was not filed within the statutory timeliness constraints at the time. Thus, even though the appeal had been timely, it did not act as a *supersedeas* and the appellants could be compelled to pay the judgment while the appeal was pending. *Id.* at 732. Nevertheless, the court noted that the execution of the judgment did not render the appeal moot and that "if an appellant is compelled to pay the judgmend [sic], and later is successful in his appeal, an order of restitution will be made to carry out the judgment of the court." *Id.* at 731-32.

In ***Marra v. Marra***, 113 A.2d 320 (Pa. Super. 1955), this court briefly reviewed the earlier restitution cases when it addressed the propriety of restitution for overpayment of alimony. There, the trial court ordered the husband to pay $300 per month in alimony and, on appeal, this court reduced the award to $160 per month in accordance with the statutory limit based on the husband's income. *Id.* at 320. The husband had complied with the trial

court's order while his case was pending on appeal. *Id.* Following his successful appeal, the husband petitioned in the trial court to reduce his alimony payment by credit for his "overpayments" while the appeal was pending. *Id.* This court relied in part on the previously-cited cases seeking writs of restitution following a successful appeal when it rejected the husband's arguments. *Id.* at 320-21 (citing *Benscotter*, *supra*; *Whitesell*, *supra*; *Charak*, *supra*). We found that in the earlier restitution cases, the petitioner seeking restitution had been compelled to pay the judgment through coercion. *Id.* at 321. Because the husband in *Marra* was not coerced through execution of a judgment, we concluded that the restitution cases were inapplicable. *Id.*

The common law action for restitution following reversal of a judgment on appeal has also been sanctioned by the United States Supreme Court. *See*, *e.g.*, *U.S. v. Morgan*, 307 U.S. 183, 197 (1939) ("What has been given or paid under the compulsion of a judgment the court will restore when its judgment has been set aside and justice requires restitution."); *Baltimore & O.R. Co. v. U.S.*, 279 U.S. 781, 786 (1929) ("The right to recover what one has lost by the enforcement by a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done."). In addition, courts in other states have allowed for restitution following reversal on appeal based on

common law principles in more modern cases.[4]  Finally, the Restatement of the Law — Restitution recognizes a common law claim for restitution following the reversal of a judgment on appeal to prevent unjust enrichment of the party who received the judgment.  RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 18 (2011).

**B.**

While the writ of restitution was a well-established equitable principle in our early common law, it has fallen into disuse and is rarely referenced in case law since **Charak**.  Nevertheless, the writ has never been extinguished by case law, statute or court rule, and the equitable principles underlying the writ remain sound.  Where, as here, a judgment is executed and subsequently reversed on appeal, the trial court is empowered to order restitution for the judgment paid to place the parties into the positions they occupied prior to the execution of the judgment.

---

[4] **See, e.g.**, **J&J Container Manufacturing, Inc. v. Cintas-R U.S., L.P.**, 516 S.W.3d 635 (Tx. App.—Houston [1st Dist.] 2017); **M.S. Berkoff Co., Inc. v. McGuire**, 48 N.Y.S.3d 870 (N.Y. 2017); **Zeke Coffee, Inc. v. Pappas-Alstad Partnership**, 370 P.3d 261 (Colo. Ct. App. 2015); **Minott v. Lee Alan Bryant Health Care Facilities, Inc.**, 998 N.E.2d 273 (Ind. Ct. App. 2013); **Progressive Direct Ins. Co. v. Stuivenga**, 276 P. 3d 867 (Mont. 2012); **Munoz v. MacMillan**, 195 Cal. 4th 648 (Ct. App. 2011); **KeyBank Natl. Assn. v. Mazer Corp.**, 935 N.E.2d 428 (Ohio Ct. App. 2010); **Dunn v. Dunn**, 39 So.3d 194 (Ala. Civ. App. 2009); **Bernoskie v. Zarinsky**, 927 A.2d 149 (N.J. Super. Ct. App. Div. 2007).

In addition to the precedents cited in Part II.A, **supra**, our jurisdictional statutes and Rules of Appellate Procedure support this conclusion.  In deciding an appeal, this court "may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances."  42 Pa.C.S. § 706.  Rule of Appellate Procedure 2591 governing proceedings on remand[5] states that "[o]n remand of the record the court or other government unit below *shall* proceed in accordance with the judgment or other order of the appellate court."  Pa.R.A.P. 2591(a) (emphasis added).  This mandatory language requires a trial court to abide by the judgment on appeal in any further proceedings following remand.

We have also held that Rule 2591 enables a trial court to refund court fees and costs in a criminal case when the defendant's conviction was vacated on appeal.  **See Commonwealth v. McKee**, 38 A.3d 879, 882 (Pa. Super. 2012).  Similarly, Rule 2591 empowers a trial court in a civil case to order

---

[5] Our decision and order in Bembry's appeal did not explicitly remand the record to the trial court. **Metro Real Estate Investment, LLC v. Bembry**, 207 A.3d 336, 341 (Pa. Super. 2019) ("Judgment vacated.  Order denying post-trial relief reversed.  Jurisdiction relinquished.").  Even though the order did not specify that the record would be remanded, the docket entries reflect that the record was returned to the trial court and no petition for allowance of appeal was filed in our Supreme Court.  **See Commonwealth v. McKee**, 38 A.3d 879, 882 (Pa. Super. 2012) (citing Pa.R.A.P. 2571).  Under these circumstances, it is clear that the record was remanded and jurisdiction over the matter vested again in the trial court.  **Id.**

restitution for a judgment executed and subsequently reversed on appeal. Such an order by the trial court would effectuate this court's decision to vacate the judgment and place the parties back into the positions they occupied prior to executing the judgment.

Additionally, with exceptions not relevant here, the courts of common pleas have "unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas." 42 Pa.C.S. § 931(a). All courts retain the power to issue "every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction." 42 Pa.C.S. § 323. These precepts encompass the writ of restitution following reversal of a judgment on appeal because the common law writ of restitution has not been superseded by statute, rule or case law. Thus, where an appellant obtains a judgment on appeal vacating the judgment entered against him below, the trial court has jurisdiction over a motion for restitution and the power to order restitution to effectuate the appellate court's order.

**C.**

We now turn to Metro's arguments against issuance of restitution under the facts of this case. It first argues that once it marked the judgment against Bank of America satisfied on the trial court docket, the full judgment was

extinguished and a legal nullity. Metro contends that the satisfaction extinguished this court's jurisdiction over Bembry's prior appeal based on the well-established principle that a judgment must be entered of record before this court may exercise jurisdiction over a case. *See* Pa.R.A.P. 301(c). Metro then posits that this court did not have jurisdiction over the case after satisfaction was entered and the result of Bembry's prior appeal, which was decided approximately nine months after the satisfaction was entered, was also a legal nullity.

When a judgment creditor receives satisfaction of a judgment, it is obligated to enter the satisfaction on the record, which discharges the judgment entirely. 42 Pa.C.S. § 8104(a). "The term satisfaction, as used in this statute, refers to a situation in which a creditor has received full payment for the underlying debt obligation. Moreover, satisfaction of a judgment ordinarily extinguishes the judgment and implies or manifests an expression of finality as to all questions of liability and damages." *Seasor v. Covington*, 670 A.2d 157, 159-60 (Pa. Super. 1996) (cleaned up; footnote omitted). Metro contends that the July 24, 2018 satisfaction it filed in this case extinguished the judgment against Bembry, mooting all legal questions in his appeal and his subsequent motion for restitution.

We need not reach Metro's argument that somehow courts are foreclosed from ordering restitution because the judgment had been satisfied on the docket because this argument is belied by the certified record. On July

13, 2018, Metro filed a *Praecipe* to Enter Judgment Against Garnishee based on Bank of America's answers to interrogatories concerning Bembry's accounts. While Metro did file a satisfaction of record after it received Bembry's funds from Bank of America, is specified that the judgment should be marked "satisfied against **Bank of America only**." Order to Mark Judgment Satisfied, 6/24/18 (emphasis in original). Accordingly, the trial court docket states "Partial Satisfaction Filed" in reference to the satisfaction against Bank of America. R.R. at 11a. Metro garnished only $24,017.70 from Bank of America, while the full judgment against Bembry amounted to $27,000. Metro did not recover the full amount of its judgment against Bembry, nor did it mark the judgment satisfied as to Bembry.[6] ***See Seasor***, ***supra*** (holding that an agreement outlining a *partial* release of liability for one party to a suit does not, by its plain language, function as a full satisfaction as to all parties). Because the judgment was not satisfied in full, Metro's argument is meritless.

_____

[6] Even if Metro had marked the judgment as satisfied in full, this court has previously exercised jurisdiction over an appeal where the judgment had been satisfied in full and the appellant's motion to open judgment was denied as moot because of that satisfaction. ***See, e.g.***, ***Wilk v. Kochara***, 647 A.2d 595, 597 (Pa. Super. 1994) (reiterating that "where the amount owed by the debtor was in dispute, the creditor could not appropriate the debtor's collateral, have the judgment marked as satisfied and then preclude the debtor from challenging the judgment by means of a petition to open"). To hold otherwise would allow a judgment-winner to unilaterally moot a debtor's appeal and deprive him of appellate review of potentially meritorious issues.

**D.**

**1.**

Next, Metro argues that the Rules of Appellate Procedure governing *supersedeas* enacted in 1975 effectively replaced the common law writ of restitution. It argues that because Bembry did not post a *supersedeas* bond or move to stay execution of the judgment pending his appeal, he has forfeited his right to seek restitution for the funds garnished from his bank. This argument is not supported by the text of the rules or by the history of the *supersedeas* procedure.

Rule 1701 simply permits a trial court to grant *supersedeas* after a notice of appeal is filed. Pa.R.A.P. 1701(b)(1). Rule 1731 provides only that an appeal from a money judgment shall "operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid." Pa.R.A.P. 1731(a). Similarly, Rule 1732 allows an appellant to seek a stay or modification of *supersedeas* from the trial court or appellate court as an alternative to posting the security outlined in Rule 1731. Pa.R.A.P. 1732(a)-(b); **see also** Pa.R.A.P. 1733 (allowing for alternative forms of security upon agreement of the parties or application to the court). Finally, Rule 1735 provides that "[t]he filing of appropriate security in the amount required by or pursuant to this chapter within 30 days from the entry of the order appealed from shall stay any execution theretofore entered." Pa.R.A.P. 1735(a).

Certain classes of litigant not relevant here are exempt from the requirement of filing security for *supersedeas* on appeal. Pa.R.A.P. 1736.

None of these rules governing *supersedeas* require an appellant to file security or apply for a stay of execution on pain of forfeiting any judgment paid if the judgment is later reversed. They simply provide an appellant with an avenue to seek a stay of execution of a judgment pending appeal or, in the case of the appeal bond, have any lien against the appellant's property discharged while the appeal is pending. ***Leoni v. Leoni***, 153 A.3d 1073, 1081 (Pa. Super. 2017) (citing Pa.R.A.P. 1735(b)).

*Supersedeas* was available to stay the execution of a judgment or court order during an appeal long before the current Rules of Appellate Procedure were adopted in 1975 and made effective in 1976. ***See Drabant v. Cure***, 124 A. 340 (Pa. 1924) (addressing the use of *supersedeas* to prevent the judicial sale of property following bankruptcy proceedings). Prior to the Rule's enactment, *supersedeas* procedures were governed by statute enacted in 1909. ***Leoni***, ***supra*** (citing 12 P.S. § 1139 (P.L. 103, April 22, 1909, Section 1)). The statute allowed an appellant to file bail pending appeal which would discharge any lien against the appellant's property that was entered as a result of the judgment against him. ***Id.*** at 1081-82. An official note to Rule 1735 at the time of its enactment specified that the rule was based in part on and superseded the statute but made "no change in substance" to that act. ***Id.*** at 1082 & n.5. This Rule then was not intended to alter the rights that were

available to litigants under the statutory *supersedeas* procedure. While *supersedeas* was available by statute to an appellant in 1909 just as it is today, our courts continued to reaffirm the availability of the writ of restitution years later. **See Wolongevicz**, **supra**; **Charak**, **supra**.

Moreover, "[t]he purpose of a supersedeas bond is to maintain the status quo and protect [the winning party] from injury during the appeal period. Such a bond protects an appellee because it guarantee[s] that his judgment, if it is affirmed, will be paid in full, with interest and court costs." **Parkinson v. Lowe**, 760 A.2d 65, 67-68 (Pa. Super. 2000) (cleaned up; alterations in original). It is not intended as a protective measure the appellant is obligated to undertake in order to preserve his right to recover funds he was compelled to pay pursuant to a judgment that is ultimately vacated. We conclude that just as the statute governing *supersedeas* did not replace the writ of restitution, neither did the rules of appellate procedure.

**2.**

Finally, in a related argument, Metro contends that Bembry is not entitled to restitution under unjust enrichment principles because he did not seek *supersedeas* during his prior appeal or move to strike the satisfaction of the judgment.[7] It points out that Metro cannot be at fault for seeking to execute a valid judgment, even if that judgment was later vacated by this

---

[7] We have already rejected Metro's argument that the judgment against Bembry was satisfied while his prior appeal was pending. Part 2.C, **supra**.

court. It concludes that Bembry cannot be entitled to restitution for unjust enrichment unless there was "'(1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied.'" Metro's Brief at 15 (quoting **Mitchell v. Moore**, 729 A.2d 1200, 1203 (Pa. Super. 1999)). Metro cites the Restatement (First) of the Law — Restitution for the principle that "a person is not entitled to restitution 'if the conduct of the recipient was not tortious, and he was no more at fault for his receipt, retention or dealing with the subject matter than was the claimant.'" Metro's Brief at 15-16 (citing RESTATEMENT (FIRST) OF RESTITUTION § 142(2) (1937)). These arguments are meritless.

Initially, we note that the section of the Restatement that Metro relies upon relates to "change of circumstance" as a defense to an action for restitution. RESTATEMENT (FIRST) OF RESTITUTION § 142(2) (1937). The section goes on to explain that "[a]ny change of circumstances which would cause or which would be likely thereafter to cause the recipient entire or partial loss if the claimant were to obtain full restitution, is such a change as prevents full restitution if the recipient was not guilty of a tort nor substantially more at fault than the claimant." **Id.**, comment (b). Metro did not allege in the trial court or in this appeal that there has been any material change in circumstance that would render restitution inequitable and this provision is not applicable to this case.

We reiterate that the process for obtaining *supersedeas* predates the current Rules of Appellate Procedure and was available by statute at the same time that the writ of restitution appears in our early case law. ***See Drabant***, ***supra***; ***Leoni***, ***supra.*** Despite the availability of *supersedeas* to prevent a judgment-winner from collecting on a judgment while an appeal was pending, our Supreme Court held that restitution was an available remedy for an appellant who did not timely stay the execution of a judgment on appeal. ***See*** ***Charak***, ***supra***; ***Wolongevicz***, ***supra***. Bembry did not seek equitable relief with "unclean hands" when he sought restitution instead of pursuing *supersedeas*, as *supersedeas* is not a prerequisite for relief under the writ of restitution.

Here, Metro cannot be faulted for executing its judgment and garnishing funds from Bembry's accounts based on a judgment that was valid at the time. By doing so, Metro was enriched to the tune of $24,017.70. This enrichment later became unjust when the judgment underlying it was vacated by this court. Without restitution, Bembry's successful appeal would be a hollow victory and Metro would be enriched without valid legal basis, despite this court's decision in Bembry's prior appeal. To prevent this unjust enrichment, Bembry is entitled to restitution for the judgment paid.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 3/2/2021*